

NUMBER 13-10-00165-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

NIEVES E. ROMAN,                                     **Appellant,**

**v.**

CUPRUM S.A. DE C.V.,                                     **Appellee.**

## On appeal from the 284th District Court
## of Montgomery County, Texas.

# MEMORANDUM OPINION

**Before Justices Garza, Benavides and Perkes**
**Memorandum Opinion by Justice Garza**

Appellant, Nieves E. Roman, sued appellee Cuprum S.A. de C.V. ("Cuprum"), alleging products liability and violations of the Texas Deceptive Trade Practices-Consumer Protection Act ("DTPA"). *See* TEX. BUS. & COM. CODE ANN. §§ 17.41–.63 (West 2011). After a jury trial, a take-nothing judgment was rendered in Cuprum's

favor. Roman now appeals the judgment, contending by three issues that the trial court erred in admitting the testimony of three expert witnesses and related documentary evidence. We affirm.

## I. BACKGROUND

On November 27, 2002, Roman was cleaning a house owned by Bradley Baird. In order to clean the house's air vents, Roman used a step ladder that she found in Baird's garage. As Roman descended the ladder, she fell and sustained an ankle injury which later required surgery. In 2004, Roman filed suit against Cuprum, which allegedly designed, manufactured, marketed and sold the ladder.[1] Roman alleged that the ladder was unreasonably dangerous and defective and that Cuprum breached certain implied warranties in violation of the DTPA.

The case proceeded to trial in 2009. A primary issue at trial was the strength of the aluminum used by Cuprum in manufacturing the ladder. Two expert witnesses testified on Roman's behalf that the aluminum used in the ladder was too soft and did not meet specifications for yield and tensile strengths. Roman argued that, because of the inferior materials, the ladder weakened and buckled when she attempted to descend it. In response, Cuprum contended that the ladder was not defective and that Roman's injuries were the result of her own negligence in misusing the ladder. Cuprum also alleged that any damage to the ladder was caused by the accident and was not a defect.

After trial, the jury found no manufacturing defect, no design defect, no marketing

---

[1] Roman also sued Baird, Wal-Mart Stores, Inc. (where the ladder was allegedly purchased), Louisville Ladder (another ladder manufacturer), and Grupo IMSA, S.A. de C.V. (Cuprum's parent corporation), among other entities. All defendants other than Cuprum were eventually dismissed from the case before trial and are not parties to this appeal.

defect, no deceptive trade practices, and no negligence on Cuprum's part. The trial court rendered judgment on the verdict on November 19, 2009, and later denied a motion for new trial presenting the same arguments that Roman makes on appeal. This appeal followed.[2]

## II. DISCUSSION

Roman argues by her three issues that the trial court erred in admitting the testimony and related documentary evidence of three expert defense witnesses: Erick H. Knox, Ph.D., P.E.; Thomas J. Schmitt, P.E.; and Michael E. Stevenson, Ph.D., P.E. Specifically, Roman contends that Cuprum's disclosures during the discovery process did not provide her with sufficient notice of the substance of experts' mental impressions and opinions. In response, Cuprum contends: (1) Roman waived any complaint about the adequacy of the disclosures by failing to object prior to trial; (2) the disclosures were adequate and complied with Texas Rule of Civil Procedure 194; (3) if the disclosures were incomplete, Roman was required to object prior to trial, which she did not do; (4) Roman has not shown that the alleged deficiencies in the disclosures caused her unfair surprise or prejudice; and (5) the admission of the expert evidence, even if error, was harmless because it did not lead to an improper judgment.

### A. Applicable Law and Standard of Review

Texas Rule of Civil Procedure 194.2 provides that a party may request disclosure of any or all of the following for each testifying expert:

    (1)    the expert's name, address, and telephone number;

    (2)    the subject matter on which the expert will testify;

---

[2] This case was transferred from the Ninth Court of Appeals pursuant to a docket equalization order issued by the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

3

(3)      the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them, or if the expert is not retained by, employed by, or otherwise subject to the control of the responding party, documents reflecting such information;

(4)      if the expert is retained by, employed by, or otherwise subject to the control of the responding party:

      (A)      all documents, tangible things, reports, models, or data compilations that have been provided to, reviewed by, or prepared by or for the expert in anticipation of the expert's testimony; and

      (B)      the expert's current resume and bibliography[.]

TEX. R. CIV. P. 194.2(f). The responding party must make a complete response based on all information reasonably available to that party or its attorney at the time the response is made. TEX. R. CIV. P. 193.1.

The purpose of Rule 194.2(f) is "to give the opposing party sufficient information about the expert's opinions to prepare to cross-examine the expert and to prepare expert rebuttal evidence." *Miller v. Kennedy & Minshew, P.C.*, 142 S.W.3d 325, 348 (Tex. App.—Fort Worth 2003, pet. denied). A failure to properly designate expert witnesses results in the automatic exclusion of the expert testimony unless the offering party demonstrates either good cause for the failure or a lack of unfair surprise or unfair prejudice. *See* TEX. R. CIV. P. 193.6(a); *Perez v. Embree Constr. Group, Inc.*, 228 S.W.3d 875, 884 (Tex. App.—Austin 2007, pet. denied). The rule states, however, that when answering a request for disclosure, "the responding party need not marshal all evidence that may be offered at trial." TEX. R. CIV. P. 194.2(c).

We review a trial court's decision to admit evidence for abuse of discretion. *In re J.P.B.*, 180 S.W.3d 570, 575 (Tex. 2005). A trial court abuses its discretion when it acts

4

without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). In determining whether there was an abuse of discretion, "we must ascertain whether the trial court's finding served the purpose of thwarting legal gamesmanship and trial by ambush." *$27,877.00 Current Money of the U.S. v. State*, 331 S.W.3d 110, 120 (Tex. App.—Fort Worth 2010, pet. denied) (internal quotation omitted).

## B.     Knox

With respect to the anticipated testimony of Dr. Knox, Cuprum's Rule 194 response stated in relevant part as follows:

> Dr. Knox is familiar with the design, manufacture, applicable standards, and operation of the ladder model at issue in this case. Dr. Knox has inspected and examined the ladder and accident scene at issue herein. Dr. Knox is expected to testify about all aspects of the alleged ladder accident at issue in this case including but not limited to the cause of the accident, the use of the ladder, the cause of the damage now existing on the ladder, the forces exerted on the ladder, the loading of the ladder, and the cause of Plaintiff[']s injuries. Dr. Knox is also expected to testify about the design, testing, manufacture, assembly, and mechanics of the ladder at issue, the materials used in the ladder at issue, the applicable standards and specifications for the ladder at issue, and the testing performed by Plaintiff's expert on the ladder at issue. Dr. Kno[x] will also respond to any testimony given by any expert or other witness for Plaintiff or any other party relating to alleged defects in the design, manufacture, marketing, labeling, and/or testing of the subject ladder or any other issues related to the cause of the accident and Plaintiff's injuries.

> Based on Dr. Knox's inspection of the subject ladder and the accident scene, testing performed on the subject ladder and exemplar ladders, his engineering background, experience in the manufacturing, design and testing of ladders, and his review of the materials in this case that have been provided to date, Dr. Knox has opined that there are not defects in the manufacture or design of the subject ladder, the subject ladder is reasonably safe in design, that the instructions and warnings are adequate and in compliance with the applicable standards, and that the most likely cause of Plaintiff[']s accident was the improper set up, misuse, and/or mishandling of the ladder at issue.

5

At trial, Dr. Knox testified that, as part of his work in this case, he analyzed the actual ladder used by Roman (the "subject ladder") as well as exemplar ladders to determine the cause of the accident. He also stated that he reviewed statements of Roman and others involved in the case, as well as documents provided by counsel. He further testified regarding his independent testing of exemplar ladders; demonstrative exhibits containing video recordings of that testing were shown to the jury.

At trial,. Roman objected to Dr. Knox's testimony on the basis that it exceeded the scope of Cuprum's Rule 194 disclosure. On appeal, she claims that "Cuprum obviously did not disclose to Roman that Knox had performed independent testing outside of Roman's observations, nor did it disclose the results of his testing or his theories regarding" those results.

We find Roman's complaint meritless. Cuprum's Rule 194 disclosure stated that Dr. Knox was expected to testify about his "testing performed on the subject ladder and exemplar ladders" and did not specify where, when, or in whose presence such testing took place. While the disclosure did not specifically describe the results of this testing, it did state that Dr. Knox concluded from all of his work on the case, including the independent testing of exemplar ladders, that the subject ladder was "reasonably safe in design." Additionally, Cuprum's Rule 194 disclosure stated that Dr. Knox was expected to respond to any testimony given by Roman's experts or other witnesses about defects in the ladder or the cause of Roman's accident. As Roman recognizes, part of Dr. Knox's testimony was elicited in an attempt to refute the theory previously presented by one of Roman's expert witnesses, Frank Johnson, that the subject ladder buckled due to weakness and was unreasonably dangerous.

6

We conclude that the disclosures provided by Cuprum were adequate to give Roman "sufficient information" about Dr. Knox's opinions to allow her to prepare to cross-examine him and to prepare rebuttal testimony. *See Miller*, 142 S.W.3d at 348. We note also that, if Roman believed that Cuprum's disclosures were insufficiently specific, she could have moved to compel additional disclosure, *see Remington Arms Co. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993) ("the failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct"), or she could have taken the opportunity to depose Dr. Knox. Roman chose to do neither of those things.

We overrule Roman's first issue.

## C.     Schmitt

Cuprum's Rule 194 response stated the following with respect to the anticipated testimony of Schmitt and another potential witness, Spencer Gross:

> Mr. Schmitt and Mr. Gross are engineers employed by Louisville Ladder. Mr. Schmitt and Mr. Gross are familiar with the design, manufacture, mechanics, and operation of the ladder model at issue in this case. Mr. Schmitt and Mr. Gross may provide testimony concerning Louisville Ladder's testing of and compliance with applicable standards of the climbing products it designs, manufactures, tests, labels and markets, including the ladder at issue in this lawsuit. Mr. Schmitt and Mr. Gross may also provide testimony concerning the design, testing, manufacture, and assembly of the ladder at issue and the materials used in the ladder at issue. Mr. Schmitt and Mr. Gross may also provide testimony concerning the alleged ladder accident at issue in this case including but not limited to the cause of the accident, the cause of the damage now existing on the ladder, and the cause of Plaintiff's injuries. They are expected to respond to any testimony given by any expert or other witness for Plaintiff or any other party relating to alleged defects in the design, manufacture, marketing, labeling, and/or testing of the subject ladder or any other issues related to the cause of the accident and Plaintiff's injuries.

7

Schmitt's curriculum vitae, which is one of the discoverable items under Rule 194, *see* TEX. R. CIV. P. 194.2(f)(4)(B), was not produced by Cuprum until October 4, 2009, one day before trial commenced and eight days before Schmitt was called to testify.

Roman, who objected to Schmitt's testimony at trial, complains now that the trial court erred by admitting Schmitt's curriculum vitae and by permitting Schmitt to testify as to work he had done as a member of committees affiliated with Underwriters Laboratories ("UL") and the American National Standards Institute ("ANSI"). At trial, Schmitt testified in part that the type of ladder used by Roman had been tested by UL and determined to be in accordance with ANSI standards. According to Roman, "[w]ithout Cuprum disclosing the CV prior to trial, there was no notice given to Roman of Cuprum's expert's membership in the UL and ANSI committees and that Cuprum was going to bolster that expert's testimony with those memberships, as they, in fact, did."

We note first that, contrary to Roman's representation, Cuprum disclosed Schmitt's curriculum vitae, which contained information as to his UL and ANSI memberships, one day prior to the commencement of trial. In any event, we find no reversible error in the trial court's decision to admit this evidence. Schmitt's testimony regarding the subject ladder's compliance with ANSI standards was arguably anticipated by the statement in Cuprum's Rule 194 disclosure that Schmitt "may provide testimony concerning Louisville Ladder's testing of and compliance with applicable standards of the climbing products it designs, manufactures, tests, labels and markets, including the ladder at issue in this lawsuit." Moreover, Roman has not explained how the admission of this evidence probably led to the rendition of an improper judgment or

8

probably prevented her from properly presenting her case on appeal. *See* Tᴇx. R. Cɪv. P. 44.1(a). Her second issue is overruled.

**D.     Stevenson**

Finally, as to Dr. Stevenson's anticipated testimony, Cuprum's Rule 194 response stated:

> Dr. Stevenson is familiar with the design, manufacture, applicable standards, and operation of the ladder model at issue in this case. Dr. Stevenson is expected to testify about all aspects of the alleged ladder accident at issue in this case including but not limited to the cause of the accident, the use of the ladder, the cause of the damage now existing on the ladder, the forces exerted on the ladder, the loading of the ladder, and the cause of Plaintiff's injuries. Dr. Stevenson is also expected to testify about the design, testing, manufacture, assembly, and mechanics of the ladder at issue, the materials used in the ladder at issue, the applicable standards and specifications for the ladder at issue, and the testing performed by Plaintiff's expert on the ladder at issue. Dr. Stevenson will also respond to any testimony given by any expert or other witness for Plaintiff or any other party relating to alleged defects in the design, manufacture, marketing, labeling, and/or testing of the subject ladder or any other issues related to the cause of the accident and Plaintiff's injuries.
>
> Based on Dr. Stevenson's review of the testing performed by Plaintiff, review of the materials in this case that have been provided to date, his engineering background, experience in the manufacturing, design, and testing of ladders, Dr. Stevenson is expected to opine that there were not defects in the manufacture or design of the subject ladder, the subject ladder is reasonably safe in design, and that the most likely cause of the Plaintiff's accident was the improper set up, misuse, and/or mishandling of the ladder at issue.

At trial, Dr. Stevenson testified that he reviewed reports of testing done by Anderson & Associates ("Anderson") and Metallurgical Technologies, Inc. ("MTI") on the subject ladder. Dr. Stevenson stated that Anderson tested the ladder by, among other things: cutting a sample out of the ladder and pulling the sample apart to measure the tensile strength of the alloy used to produce the ladder; performing scanning electron

microscopy of the fracture surfaces on the ladder; and performing other hardness testing and metallographic testing.[3] He stated that, though testing performed by MTI revealed a "non-conformity" in terms of yield strength, the non-conformity did not mean the ladder was defective because the ultimate tensile strength of the ladder met specifications and a safety factor of four times the rated load was built in to the ladder by the manufacturer.[4]

Defense counsel asked Dr. Stevenson if he reviewed photographs taken by Rex McLellan, Ph.D., a metallurgy professor who had previously testified as one of Roman's expert witnesses. Dr. Stevenson replied that he had reviewed those photographs and then testified as follows:

| | |
|---|---|
| A. [Dr. Stevenson] | I observed [in the photographs] a mixed mode fracture . . . On those grain facets there's evidence of what is called dimple rupture or ductile fracture. It's the common and expected fracture mode for this particular alloy. So this is in my opinion consistent with ductile fracture. |
| Q. [Cuprum's counsel] | And doesn't this tell you that the alloy was improperly treated? |
| A. | No. It tells you the fracture mode and then what type of fracture it is, if it's overstress or overload type of fracture. |
| Q. | What type of fracture was this you observed? |
| A. | I mean I think there's two different ways. One is overstress or overload essentially occurring |

---

[3] Metallography is defined as the study of the structure of metals, especially with a microscope. MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY 730 (10th ed.).

[4] Dr. Stevenson testified that "there [are] two strength parameters, yield strength, which is the point at which the metal begins to deform, and ultimate tensile strength, which is the ultimate strength of the material." He further stated that, although testing revealed that subject ladder's yield strength deviated by three percent from the applicable specification, the 400-percent safety factor (which manufacturers generally build in to products "to anticipate things that are outside the scope of a design") would "absolutely" be enough to protect the end user.

> at time [sic] versus another type of fracture mechanism that's time dependent. But specifically the features are intergranular with ductile dimples, or evidence of ductile rupture along the grain boundaries.
>
> Q.          Is that something that you see with aluminum?
>
> A.          Well, it's something that you certainly see with precipitation-hardened aluminum like this. It's well known in literature and something that I have observed before in testing these types of materials. So it's fairly common.
>
> Q.          Did you see anything in there that would show that the ladder had been fatigued over a period of time?
>
> A.          No. None of the photographs that I reviewed indicated any evidence of fatigue.

Roman objected to the testimony as exceeding the scope of Cuprum's Rule 194 disclosures. Roman argues on appeal that "Cuprum failed to disclose to Roman . . . that [Dr. Stevenson] would give testimony on the subject of grain boundary weakness or grain boundary separation."[5]

Again, we find no error in the trial court's admission of this evidence. Rule 194 requires only the disclosure of "the general substance of the expert's mental impressions and opinions and a brief summary of the basis for them . . . ." TEX. R. CIV. P. 194. Cuprum's disclosure stated that Dr. Stevenson would testify as to the "mechanics of the ladder at issue, the materials used in the ladder at issue," as well as "the cause of the damage now existing on the ladder." Cuprum also disclosed that Dr. Stevenson would testify that, as a result of his testing and review of case materials, he

---

[5] A grain is a portion of a solid metal in which the atoms are arranged in an orderly pattern. Allegheny Technologies, Inc., AL-6XN Glossary, http://www.al6xn.com/about_glossary.php (last visited Feb. 14, 2012). The irregular junction of two adjacent grains is known as a grain boundary. *Id.*

11

believed the ladder was not defective or unreasonably dangerous. This was sufficient to convey the "general substance" of Dr. Stevenson's testimony. *See id.* Moreover, Dr. Stevenson's testimony specifically regarding grain boundary weakness and grain boundary separations was elicited in part in order to rebut the testimony of Dr. McLellan that he observed grain boundary weakness in the subject ladder; and Cuprum's disclosure stated that Dr. Stevenson was expected to respond to testimony provided by Roman's experts.

We note again that, as with Dr. Knox, if Roman believed that Cuprum's Rule 194 disclosure was insufficiently specific or otherwise inadequate, she could have either moved to compel more specific disclosure or deposed the witness, yet she chose to do neither. In light of this fact, we cannot say that Cuprum's actions here amounted to "legal gamesmanship" or "trial by ambush." *See $27,877.00 Current Money of the U.S.*, 331 S.W.3d at 120.

We conclude that the trial court did not abuse its discretion in admitting Dr. Stevenson's testimony. Accordingly, Roman's third issue is overruled.

### III. Conclusion

We affirm the judgment of the trial court.

_____
DORI CONTRERAS GARZA
Justice

Delivered and filed the
29th day of March, 2012.

12